UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

KENNETH DRAKE,

        Plaintiff,

   v.

LOWE'S COMPANIES, INC.,

        Defendant.
_____/

NO. CIV. S-04-0142 FCD JFM

MEMORANDUM AND ORDER

----oo0oo----

This matter is before the court on motion by defendant, Lowe's Companies, Inc. ("Lowe's"), for summary judgment pursuant to Federal Rule of Civil Procedure 56(c).[1]

---

[1] Because oral argument will not be of material assistance, the court orders the matter submitted on the briefs. E.D. Cal. Local Rule 78-230.

**BACKGROUND**

Defendant, Lowe's Companies, Inc., is the parent corporation of several subsidiary corporations, including Lowe's HIW, Inc., that run and operate retail home improvement stores in forty eight states.[2],[3] (Def.'s Reply SUF ("SUF") ¶ 1.) Employees who work in Lowe's home improvement stores must sign at-will employment agreements with Lowe's. (SUF ¶ 2.) Lowe's written employment contract specifies that any modification thereto must be in writing and signed by the President of Lowe's.[4] (SUF ¶ 3.)

On August 22, 1994, plaintiff, Kenneth Drake ("Drake"), was hired by Lowe's to work at one of its retail stores in Indiana. (SUF ¶ 4.) Drake signed an at-will employment contract with Lowe's after he was hired, which specifically stated that Drake's employment was "for an indefinite term and shall be terminable at the will of either party without notice and without cause. (SUF ¶¶ 5-6.) The written at-will employment contract was signed and

---

[2] Drake's objection to this evidence is OVERRULED. The evidence is material to explain the identity of the named defendant and its relationship to the corporations for which Drake worked, Lowe's HIW, Inc. and Lowe's Home Centers, Inc. Fed. R. Evid. 401.

[3] The court refers to Lowe's Companies, Inc. and its subsidiary corporations collectively as "Lowe's". References to a subsidiary corporation refer to that subsidiary specifically.

[4] Drake's objection to the admissibility of Drake's employment application, employment contract, document regarding Drake's employment in California, and transfer acknowledgment, Exhibits A, B, C and D respectively, attached to the Declaration of Timothy Moore, on the ground that they lack foundation, is OVERRULED. The declaration of Timothy Moore is sufficient to support a finding that the exhibits are what they purport to be. Fed. R. Evid. 901.

executed in Indiana.  (SUF ¶ 7.)

In 1999, Drake requested and received a transfer to California, believing that there were greater promotional opportunities there.  Drake was transferred to a store in Temecula, California, where he commenced work in October 1999. (SUF ¶ 8.)  As part of the transfer to California, on October 19, 1999, Drake signed a document acknowledging his employment with Lowe's was at-will.  (SUF ¶ 9.)  Drake then applied for and received a promotion to store manager at a Lowe's store in Vacaville, California, which position he assumed in March 2001. He managed the Vacaville store for approximately two years.

Wanting to return home to Indiana, Drake applied for a store manager opening at one of Lowe's stores in Indiana.[5]  His transfer was approved.  (SUF ¶ 11.)  As part of his transfer to Indiana, Drake signed a transfer agreement acknowledging that his employment relationship with Lowe's was at-will.  Drake's last day at the Vacaville store was January 31, 2003.  (SUF ¶ 12.)

Prior to his departure for Indiana, on February 1, 2003, Drake returned to the Vacaville store and asked one of his former subordinates, Ron Drago, who was the manager on duty, to pay him $1,502.00 to cash out some of his accrued vacation time.  Mr. Drago complied and paid Drake $1,502.00 from the store safe. (SUF ¶ 16.)  To credit Lowe's for the cash he received, Drake changed his January payroll records to reflect that he had taken vacation on his regular days off that month.  According to Drake, he took

---

[5]  The transfer acknowledgment, exhibit D to the Moore declaration, indicates that Lowe's requested Drake's transfer back to Indiana.  However, as Drake does not dispute that he requested the transfer, the court accepts this version of events.

3

this action after being informed by the Region 8 Human Resources Manager, Dee Dee Johnice, that he would forfeit any unused and accrued vacation time when he transferred to Indiana. (Drake Decl. ¶ 3.) Drake did not have authorization from his district manager to make the cash withdrawal.[6] (SUF ¶ 18.)

Lowe's vacation policy states that a California employee's accrued vacation time will transfer with the employee if they are transferred to another state, though it appears that Drake was not informed of this policy when he contacted Lowe's human resources department.[7] (SUF ¶ 20; Drake Decl. ¶ 3.)

On February 5, 2003, the same week Drake started working at the Indiana store, Drake's supervisor, Timothy Moore ("Moore"), was informed about Drake's unapproved cash withdrawal from the safe at the Vacaville store.[8] (SUF ¶¶ 21, 22.) On February 7, 2003, Moore interviewed Drake regarding the cash withdrawal. Drake admitted that he took the cash from the Vacaville store,

---

[6] The evidence cited by Drake to dispute this evidence does not create a triable issue. Drake states that he informed the district manager, Mark Waller, of his concern that he would forfeit vacation pay upon his transfer and requested his assistance. Drake also states that neither Ms. Johnice nor Mr. Walker provided assistance to him, despite his repeated efforts to contact them. However, Drake admits that he did not inform Mr. Walker of his intent to take a cash withdrawal for his vacation time, and did not obtain his approval to do so. (Drake Dep. at 88:3-6.)

[7] Drake's objections that this policy is not the one in place at the time Drake was terminated is OVERRULED. (Huie Supp. Decl. ¶ 2.) Moreover, Drake's legal arguments and analysis of the document does not create a triable issue.

[8] Drake's objection to this evidence is OVERRULED. The evidence is not hearsay as it is introduced not to prove the truth of the matter asserted, but to demonstrate that the information was conveyed to Mr. Moore. Fed. R. Evid. 801(c).

4

and explained that he did so to avoid losing his accrued California vacation time.[9] (SUF ¶ 23; Moore Dep. at 45:6-23, exh. A to Dec. of Randal Barnum.) After consulting with individuals from Lowe's Human Resources department, Mr. Moore determined that Drake should be terminated for taking the cash withdrawal without approval from the Vacaville store. (SUF ¶ 24.)

Drake was terminated on February 7, 2003. (SUF ¶ 25.) That day, which was a regular payday at Lowe's, Drake was paid for all the hours he worked in California since the last day in that pay period ended on January 31, 2003. (SUF ¶ 31.) On March 12, 2003, Drake was paid for all accrued vacation time, without any deduction for the $1,502.00 withdrawn from the Vacaville store. (SUF ¶ 24.) According to Lowe's, it was relying on its Indiana policy and the law of that state to distribute Drake's final pay. (SUF ¶ 24.)

Drake subsequently filed the instant complaint in Solano County Superior Court, seeking damages for breach of implied-in-fact contract, breach of the covenant of good faith and fair dealing, tortious discharge in violation of public policy, unfair competition under California Business and Professions Code section 17200, and waiting penalties under California Labor Code section 203. (<u>See</u> First Amended Complaint ("FAC"), Exh. A to Def.'s Notice of Removal, filed January 22, 2004.) Lowe's removed the action to this court on January 22, 2004. Lowe's then filed a motion to dismiss, which was denied by this court by

---

[9] The evidence Drake cites does not create a triable issue as to this fact.

5

order dated May 21, 2004. Lowe's now seeks summary judgment of all claims.

**STANDARD**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). One of the principal purposes of the rule is to dispose of factually unsupported claims or defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

In considering a motion for summary judgment, the court must examine all the evidence in the light most favorable to the non-moving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). If the moving party does not bear the burden of proof at trial, he or she may discharge his burden of showing that no genuine issue of material fact remains by demonstrating that "there is an absence of evidence to support the non-moving party's case." Celotex, 477 U.S. at 325. Once the moving party meets the requirements of Rule 56 by showing there is an absence of evidence to support the non-moving party's case, the burden shifts to the party resisting the motion, who "must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

Genuine factual issues must exist that "can be resolved only by a finder of fact, because they may reasonably be resolved in favor of either party." Id. at 250. In judging evidence at the summary judgment stage, the court does not make credibility

determinations or weigh conflicting evidence.  See T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630-31 (9th Cir. 1987) (citing Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).  The evidence presented by the parties must be admissible.  Fed. R. Civ. P. 56(e).  Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment.  See Falls Riverway Realty, Inc. v. City of Niagara Falls, 754 F.2d 49, 57 (2d Cir. 1985); Thornhill Publ'g Co., Inc. v. GTE Corp., 594 F.2d 730, 738 (9th Cir. 1979).

**ANALYSIS**

**I.   Contract-Based Claims**

Lowe's seeks summary judgment of Drake's First and Second Claims, for breach of an implied-in-fact employment contract and breach of the covenant of good faith and fair dealing. Specifically, Lowe's contends that Indiana law applies to Drake's contract-based claims, under which the claims fail. Alternatively, Lowe's contends that summary judgment is appropriate even under California law.  In response, Drake argues that summary judgment is inappropriate under California law, but omits any discussion of Indiana law.

The court's analysis of the threshold conflict of law issue is complicated by the parties' dispute regarding what constitutes the "contract".[10]  Parties devote little time in their papers to

---

[10]   Lowe's submitted a document, signed by Drake on August 22, 1994, with a section entitled "Contract of Employment."  (Ex. B to Moore Decl.)  Lowe's also submitted two documents, the dates on which correspond to Drake's transfer to California in 1999 and
(continued...)

7

this rather tricky legal question. Fortunately, the court need not determine which state's law applies because, even applying California law, as Drake requests, Drake cannot prevail.[11] See Anderson v. Savin, Corp., 206 Cal. App. 3d 356, 366 (1988)(finding no conflict of law where the outcome under either state's law would be the same).

**B.   Breach of Implied Contract**

California Labor Code section 2922 provides in relevant part, "An employment, having no specified term, may be terminated at the will of either party on notice to the other . . .." This statutory presumption may be superseded by a contract, express or implied, limiting the employer's right to discharge the employee. Foley v. Interactive Data Corp., 47 Cal. 3d 654, 679-80 (1988). In determining whether parties entered into an implied-in-fact employment security agreement, California courts evaluate a variety of factors, including "the personnel policies or

---

[10](...continued)
to Indiana in 2003, also signed by Drake, which contain language regarding the at-will nature of Drake's employment. (Exs. C and D to Moore Decl.)  It is unclear from parties papers, if the subsequent documents are addenda to the original contract or constitute separate and independent employment agreements.  By contrast, Drake appears to deny the existence an express written contract, and argue instead that parties formed an implied-in-fact contract over the course of Drake's eight and a half year employment at Lowe's.  However, Drake also asserts, somewhat contradictorily, that his employer at the Vacaville store was "different" than his employer at the Indiana store, and that, he terminated his employment when he transferred to Indiana and began a new employment relationship with the Indiana Lowe's store.

[11]   Lowe's is correct that Drake's contract claims fail under Indiana law.  See Orr v. Westminster Village North, 689 N.E. 2d 712, 717 (Ind. 1997); Keating v. Burton, 545 N.E. 2d 35 (Ind. Ct. App. 1989)(consideration required for enforceable job security agreement based on oral statements).

8

practices of the employer, the employee's longevity of service, actions or communications by the employer reflecting assurances of continued employment, and the practices of the industry in which the employee is engaged." Pugh v. See's Candies, Inc., 116 Cal. App. 3d 311, 327 (1981); Foley, 47 Cal. 3d at 680 (1988).

However, an at-will provision in an express written agreement, signed by the employee, cannot be overcome by proof of an implied contrary understanding. Halvorsen v. Aramark Uniform Services, Inc., 65 Cal. App. 4th 1383, 1387-89 (1998).

Drake contends that there is a triable issue regarding the existence of an implied-in-fact contract. Specifically, Drake points to the following evidence: his eight-and-a-half years of continuous employment with Lowe's, his promotions, salary increases and merit pay raises, as well as representations by "defendant" that he would have job security with defendant and that Plaintiff would not be terminated except for good cause."[12] (FAC ¶ 15.)

However, Drake's argument ignores the undisputed evidence that parties had an express at-will employment agreement. Lowe's submitted evidence that Drake signed an employment contract in 1994 which stated expressly that his employment was "for an indefinite term and . . . terminable at the will of either party without notice and without cause." (Ex. B to Moore Decl.) Moreover, the two additional documents signed by Drake in 1999 and 2003 reaffirmed that his employment was "at will."

---

[12] Arguably, Drake's statement that he was told by "his superiors" that he would have job security, is inadmissible hearsay. Fed. R. Evid. 802. However, Lowe's does not object to the admission of this statement.

Specifically, the document signed October 18, 1999 provides:

> II. EMPLOYMENT AT WILL - I UNDERSTAND THAT MY EMPLOYMENT WITH LOWE'S HIW, INC. IS FOR AN INDEFINITE PERIOD AND THAT I HAVE A RIGHT TO TERMINATE MY EMPLOYMENT RELATIONSHIP FOR ANY REASON AT ANY TIME, AND THAT LOWE'S HIW, INC. RESERVES THE RIGHT TO DO THE SAME. THIS WILL ALSO CONFIRM THAT I UNDERSTAND THAT NO EXPRESS OR IMPLIED PROMISE OR GUARANTEE WITH REGARD TO THE DURATION OF AN EMPLOYEE'S EMPLOYMENT, WAGES, OR BENEFITS, IS BINDING UPON LOWE'S HIW, INC. UNLESS MADE IN WRITING AND DULY EXECUTED BY THE PRESIDENT OF LOWE'S HIW, INC AND CLEARLY AND SPECIFICALLY IDENTIFIED AS AN EMPLOYMENT CONTRACT OR AGREEMENT.

(Ex. C to Moore Decl.)  Similarly, the document Drake signed on January 16, 2003 states:

> Your employment relationship with Lowe's is governed by the "Employment At Will" doctrine. This policy cannot be modified by any statements or omissions of statements by any member of management or Company representative, manuals, guides, employment documents or Company materials provided in connection with your employment, whether made pre or post offer unless approved, in writing, by the President of Lowe's.

(Ex. D to Moore Decl.)

"There cannot be a valid express contract and an implied contract, each embracing the same subject, but requiring different results." Shapiro v. Wells Fargo Realty Advisors, 152 Cal. App. 3d 467, 482 (1984), disapproved on other grounds by Foley, 47 Cal.3d at p. 688. The express term is controlling even if it is not contained in a fully integrated employment contract.[13] Halvorsen v. Aramark Uniform Services, Inc., 65 Cal. App. 4th at 1386 (citing Gerdlund v. Electronic Dispensers Int'l,

---

[13] Drake erroneously argues that a fully integrated employment agreement is required to establish at-will employment. Tot the contrary, an express at-will agreement, even if not fully integrated, precludes the existence of an implied contract requiring good cause for termination. Starzynski v. Capital Public Radio, Inc., 88 Cal. App. 4th 33, 38 (2001).

10

190 Cal. App. 3d 263, 272 (1987)).  Thus, the parties' express at-will agreement precludes the existence of an implied contract requiring good cause for termination.

### C.  Breach of Covenant of Good Faith and Fair Dealing

For the same reasons, Drake's claim for breach of the covenant of good faith and fair dealing fails.  In <u>Slivinsky v. Watkins-Johnson Co.</u>, 221 Cal. App. 3d 799, 806 (1990), the California appellate court explained that,

> The covenant is designed to effectuate the intentions and reasonable expectations of parties reflected by mutual promises within the contract.  Here the parties agreed that their relationship was terminable at will.  Therefore, terminating an employee without good cause does not deprive the employee of the benefits of the agreement.

<u>Id.</u> (internal citations omitted).  The parties' express employment agreement provided that Drake could be terminated at will.  As a result, Drake's termination "without good cause" did not deprive him of the benefits of the agreement.[14]

### II.  Tort and Statutory Claims

Drake's Third through Fifth Claims allege violation of California Labor Code sections 201 and 227.3, tortious discharge in violation of public policy, and unfair business practices under California Business and Professions Code section 17200.  Lowe's contends that, under Indiana law, all three claims fail.  Alternatively, Lowe's contends that summary judgment is appropriate under California law because Lowe's did not violate California Labor Code sections 203 or 227.3.

/////

---

[14] The court does not decide that Lowe's lacked good cause to terminate Drake, only that no good cause was required.

11

Drake responds that California law applies because his tort and statutory claims are predicated not on Drake's termination from the Indiana store on February 7, 2003 – as he has heretofore asserted – but on his "termination" from employment at Lowe's HIW, Inc. in California on January 31, 2003.  Essentially, Drake now contends that he resigned employment from Lowe's HIW, Inc. in California and initiated a new employment relationship with a separate employer, Lowe's Home Centers, Inc., at the store in Indiana.  Since he was "terminated" on January 31, Drake contends that Lowe's violated California Labor Code sections 201 and 227.3 by not paying him his wages and accrued vacation pay on that date.

The court rejects Drake's eleventh-hour effort to rewrite his complaint, which expressly states that his "termination" occurred on February 7, 2003.  (Compl. ¶ 28.)  Moreover, this new version of the facts directly contradicts Drake's contention, in his contract claims, that his termination from employment in Indiana on February 7, 2003 violated an implied contract created in California during his *continuous* eight-and-a-half years of employment.  (See Pl.'s Statement of Add'l Facts, incorporated in Pl.'s Statement of Genuine Issues of Material Fact in Opp'n Summ. J. at 12, ¶ 38.) Finally, Drake's contention that he was terminated on January 31, 2003 is unsupported by the evidence, which clearly demonstrates that Drake "transferred" to the Indiana store.  Indeed, Drake admits that he was "transferred." (SUF ¶ 11.)  He signed a document entitled "Relocation from #1143 to #1135," which characterizes Drake's move to the Indiana store as a "transfer" and discusses pay differences applicable to his

12

new assignment. (See Exh. D to Moore Dec.) The meager evidence submitted by Drake, that the two stores kept separate payrolls and issued different W-2 forms and tax statements is not sufficient to support a jury finding that he was "terminated" from Lowe's on January 31, for purposes of triggering the Labor Code's obligation to pay all wages and accrued vacation time. See Matsushita, 475 U.S. at 586-87 ("Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'") The court now turns to the conflict of law issue.

### A. Conflict of Law

When determining which state's substantive law is applicable to a diversity case, federal courts use the rules of the forum state. Shannon-Vail Five, Inc. v. Bunch, 270 F.3d 1207, 1210 (9th Cir. 2001). Since this case was removed from the Superior Court of the State of California, in and for the County of Solano, on grounds of diversity of citizenship, California conflict of law rules apply in this case. Shannon-Vail Five, Inc., 270 F.3d at 1210.

In the absence of an applicable statute, California uses a three-part governmental interest test in choice of law cases. Id. at §§ 19:53, 19:56; Reich v. Purcell, 67 Cal.2d 551 (1967); Arno v. Club Med Inc., 22 F.3d 1464, 1467 (9th Cir. 1994). Under that test, the court should first determine whether the two states' laws actually differ. Arno, 22 F.3d at 1467. If so, the court evaluates whether a true conflict exists by examining each state's interest in applying its law. Id. Finally, the court compares the impairment to each state under the other's rule of

13

1  law. Id.; McGhee v. Arabian American Oil Co., 871 F.2d 1412,
2  1422 (9th Cir. 1989) (citing Offshore Rental Co. v. Continental
3  Oil Co., 22 Cal.3d 157, 161-65 (1978)).
4        The court first determines whether there is a conflict
5  between California and Indiana laws. Drake's Third through Fifth
6  claims are predicated on violation of California Labor Code
7  sections 201 and 227.3, which differ from Indiana law. Compare
8  Cal. Labor Code § 201 (employer must pay wages of terminated
9  employee on final date of employment) with Indiana Code § 22-2-9-
10 2 (employer must pay wages of terminated employee on regular pay
11 day for pay period in which separation occurred). Further, while
12 both California and Indiana recognize a public policy exception
13 to the doctrine of at-will employment, the scope of the exception
14 significantly differs between the two states. See Tameny v.
15 Atlantic Richfield Co., 27 Cal. 3d 167, 172 (1980); Orr v.
16 Westminster Village North, Inc., 689 N.E.2d 712, 718 (Ind. 1997).
17 Indiana law recognizes only a limited exception to the doctrine
18 of at-will employment, such as discharge of an employee either
19 for filing a workmen's compensation claim or for refusing to
20 commit an illegal act. Orr, 689 N.E.2d at 718; Coutee v.
21 Lafayette Neighbourhood Housing Services, Inc., 792 N.E.2d 907,
22 911 (Ind. Ct. App. 2003). California law, on the other hand,
23 recognizes a much broader range of public policy exceptions to
24 the doctrine of at-will employment based on state and federal law
25 or regulations. Green v. Ralee Eng. Co., 19 Cal. 4th 66, 79-80
26 (1998).
27      Because the laws of California and Indiana differ, the court
28 must next examine each state's interest in applying its law.

14

1  <u>Arno</u>, 22 F.3d at 1467.  At the time Drake was terminated from his
2  employment on February 7, 2003, he was working and earning wages
3  in Indiana, albeit for only seven days.  It is unclear from the
4  facts whether Drake changed his residency from California to
5  Indiana, but, for purposes of this motion, the court accepts
6  Drake's assertion that he was still a California resident.  Thus,
7  Indiana has a legitimate interest in "reliably defining the
8  duties and scope of liability of an employer doing business
9  within its borders," while California claims an interest in
10 providing compensation to its residents and in the prompt payment
11 of such compensation.  <u>See</u> <u>Arno</u>, 22 F.3d at 1468; <u>Gould v.</u>
12 <u>Maryland Sound Inds. Inc.</u>, 31 Cal. App. 4th 1137, 1147 (1995).
13 California's interest is strengthened by the fact that Drake
14 earned the vacation pay at issue as a wage earner in California.
15      Finally, the court must determine the impairment to each
16 state if its laws are not applied.  If Indiana law is applied,
17 Drake will not be denied any compensation due him; thus, only
18 California's interest in ensuring *prompt* payment would be
19 impaired.  As Drake received all he was owed within 33 days of
20 his termination, California's interest is minimally impaired.  By
21 contrast, application of California law to the termination of
22 employees in Indiana would seriously impair Indiana's interest in
23 reliably defining the duties and scope of liability of an
24 employer doing business within its borders.  Indiana supervisors
25 would be obliged to ignore Indiana law and apply that of a
26 foreign jurisdiction whenever an employee transferred from
27 another state.  This would undermine the uniformity of Indiana
28 laws relating to employee termination and final payment of wages

15

and benefits.  As a result, the court concludes that, under California's governmental interest test, Indiana law applies to Drake's Third through Fifth Claims.

### A.   Violation of California Labor Code section 203

Drake alleges that he is entitled to waiting time penalties under California Labor Code section 203 because Lowe's failed to pay him his wages and accrued vacation time in violation of California Labor Code sections 201[15] and 227.3,[16] on the date of his termination, February 7, 2003.  California Labor Code section 203 provides in relevant part:

> If an employer *willfully* fails to pay . . . any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days.

Id. (emphasis added).  The parties have not identified, nor has the court found, a comparable Indiana waiting time penalty statute.

/////
/////
/////
/////

---

[15] California Labor Code section 201 provides in relevant part that, if an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately.

[16] California labor Code section 227.3 provides, in relevant part that " . . . whenever a contract of employment or employer policy provides for paid vacations, and an employee is terminated without having taken off his vested vacation time, all vested vacation shall be paid to him as wages at his final rate in accordance with such contract of employment or employer policy respecting eligibility or time served . . .."

16

To the contrary, Indiana permits an employer to pay an employee their final wages at the next regularly schedule pay date. See Indiana Code § 22-2-9-2. Thus, under Indiana law, Drake's waiting time penalty claim fails.[17]

### C.  Tortious Discharge in Violation of Public Policy

Drake alleges that his discharge violated California Labor Code section 227.3 in that he was discharged for the purpose of denying him vacation pay to which he was entitled.

This claim does not fall within the narrow parameters of a claim for tortious discharge under Indiana law. Such a claim must be based on an employee's discharge for filing a workmen's compensation claim or refusing to commit an illegal act. Orr, 689 N.E.2d at 718.[18]

---

[17] Even under California law, summary judgment of Drake's Third Claim is appropriate because Drake failed to submit evidence to support a jury conclusion that Lowe's failure to pay his wages on the date of his termination was wilful. In the context of California Labor Code section 203, wilful means that the employer intentionally failed or refused to perform an act which was required to be done. Barnhill v. Robert Saunders & Co., 125 Cal. App. 3d 1, 7 (1981). Here, the undisputed evidence demonstrates that, when Drake was terminated, he was working in Indiana, and that Lowe's relied on its Indiana policy and the law in that state to distribute Drake's final compensation. (SUF ¶ 32.) Drake has submitted no contrary evidence to support a jury finding that Lowe's payment of Drake's accrued vacation time after his last day of employment was anything other than good faith reliance on Indiana law. See Road Sprinkler Fitters Local Union No. 669 v. G & G Fire Sprinklers, Inc., 102 Cal. App. 4th 765, 783 (2002)(mistaken belief regarding whether wages are owed may negate a finding of willfulness).

[18] Even under California law, Drake has failed to establish a triable issue on his wrongful discharge claim. In order to sustain a claim of wrongful discharge in violation of fundamental public policy under California law, Drake must prove that his dismissal violated a policy that is (1) fundamental, (2) beneficial for the public, and (3) embodied in a statute or constitutional provision. Turner v. Anheuser-Busch, Inc., 7 Cal.
(continued...)

**C.   Unfair Competition Claim**

Obviously, California's unfair competition law is inapplicable in Indiana.  Moreover, it does not appear that Indiana has any comparable statute. Thus, under Indiana law, Drake's unfair competition claim fails.

**CONCLUSION**

For the foregoing reasons, Lowe's motion for summary judgment is GRANTED.  The clerk is directed to close this file.

IT IS SO ORDERED

Dated: July 22, 2005

                                        /s/ Frank C. Damrell Jr.
                                        FRANK C. DAMRELL, Jr.
                                        UNITED STATES DISTRICT JUDGE

---

[18](...continued) 4th 1238, 1256 (1994) (citing Gantt v. Sentry Insurance, 1 Cal. 4th 1083, 1095 (1992)).  Here, Drake cannot satisfy an essential element of his wrongful discharge claim, violation of Labor Code section 227.3, because the undisputed evidence establishes that Drake was not deprived of any vacation time.  To the contrary, Lowe's paid him in full for all unused, accrued vacation time, including the $1,502.00 he had cashed out in California.  Drake's argument, that he was "terminated because he exercised his statutory right to be paid" by taking a cash payout from the Vacaville store, is illogical.  Drake has submitted no evidence or legal support for the proposition that he had a right to cash out his vacation time upon his transfer to Indiana.  To the contrary, it appears Drake's vacation time transferred with him to Indiana and was paid to him after his termination on February 7, 2003. (SUF ¶ 20.)  Thus, his termination for taking a cash withdrawal from the safe at the Vacaville store did not violate public policy.